# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>SHANNI SUE SNYDER,<br><br>        Debtor.<br><br>CHARLES O. ZEBLEY, as Chapter 7 Trustee of the Debtor,<br><br>        Movant,<br><br>        v.<br><br>CHRISTINE BIROS,<br><br>        Respondent. | Bankruptcy No. 18-21983-CMB<br><br>Chapter 7<br><br>Related Doc. No.: 66 |

## RESPONSE IN OPPOSITION TO THE TRUSTEE'S MOTION APPROVE SETLEMENT OF THE EXEMPTION OF DEBTOR'S ASSETS

AND NOW comes Christine Biros ("Biros"), by and through her undersigned counsel, and files this response in opposition to the *Trustee's Motion to Approve Settlement of the Exemption of Debtor's Assets* [Doc. No. 66] (the "Motion") and in support thereof, avers as follows:

### BACKGROUND

1. As this Court is aware, the Debtor's bankruptcy case was reopened following the Debtor's failure to disclose the only apparently valuable asset in her estate on her bankruptcy schedules which was an action (the "Action") against U Lock Inc ("U Lock") for an alleged failure of U Lock to pay wages to the Debtor. Not only did the Debtor fail to disclose this asset in her 2018 filing, but she also prosecuted the action without any involvement of, or notice to, her trustee, Charles Zebley, Esq. (the "Trustee").

2. The Trustee and the Court were only made aware of this failure to disclose the Action following the Debtor's initiation of an involuntary petition against U Lock [Case No. 22-20823-GLT] (the "U Lock Bankruptcy") and Biros' subsequent notice to the court in the U Lock Bankruptcy that the Action was not disclosed in this Case. A true and correct copy of the motion filed by Biros in the U Lock Bankruptcy, with all exhibits, is attached hereto as **Exhibit** A.

3. The Debtor continues to contend that the failure to disclose the Action (and failure to be transparent with the Court and the Trustee) is a result of her *pro se* representation, but such an excuse cannot continue to be accepted given the substantial practice of law that this Debtor has commenced and been involved with.[1] Further, the disclosure of the Action did not involve a legal question or nuance which may be reasonably and inadvertently excluded.

4. The form of the bankruptcy schedules, and the questions regarding assets and employment specifically, are straightforward and allow for a pro se debtor to accurately fill out without ambiguity. The Debtor listed other alleged actions against various parties and the only reasonable conclusions that the Action and her employment was not disclosed is because (a) she intended to deceive and defraud this Court and seek recovery on the Action to her benefit alone, or (b) the Action, and default judgment related to the Action, are fraudulent and the Debtor's claim against U Lock was fabricated with the cooperation of George Snyder and Kash Snyder, the majority shareholders and control persons of U Lock, and Debtor's siblings.

---

[1] The Debtor has demonstrated her capacity to complete substantial legal research throughout the U Lock Bankruptcy and has previously filed a significant number of law suits as a pro se plaintiff, even arguing in front of the Third Circuit Court of Appeals in a matter related to her voluntary Chapter 13 bankruptcy filed on November 17, 2003 which was later dismissed in July 2004. *See In re Snyder*, 293 Fed. Appx. 104 (3d Cir. 2008). Interestingly, even back in 2003, the Third Circuit noted serial filings by the Debtor and her family members, suggesting conduct in bad faith. *See id.* at 142. Since then, the harassing litigious conduct by the Debtor and her family has continued.

5. There are significant doubts regarding the Debtor's ability to be forthcoming to this Court (or any Court). It is clear that the "facts" and the story propounded by the Debtor have changed since this case was filed in 2018, depending on where the Debtor believes that doing so will inure to her benefit.

6. In 2018, the Debtor filed this Case and not only was the Action not disclosed, but the Debtor represented to this Court that she was unemployed. *See* Schedule I [Doc. No. 1], at 1.1. (stating that she was unemployed and her occupation was therefore "not applicable").

7. Now, four years later, the Debtor wants to assert a substantial claim against U Lock – a company owned by her siblings – related to a job that she apparently had viewing surveillance footage from 2016 through 2020. The SOFA specifically and clearly asks for employment information and information related to income of the Debtor. Pro se or not, if the Debtor was truly employed by U Lock at this time, she would not have checked "unemployed" and stated that her occupation was "not applicable" or this information would have been disclosed to the Trustee during her 341 meeting in 2018.

8. Additionally, Biros and U Lock have been engaged in litigation since October 2017 regarding the ownership of real property where U Lock operated its business. During the litigation, U Lock introduced evidence and testimony of the Debtor's siblings, Kash Snyder and George Snyder, who are the majority shareholders of U Lock, that U Lock had no employees, and specifically that Debtor had nothing to do with U Lock.

9. The first time that the Debtor made any claim to alleged wages occurred when she filed the lawsuit against U Lock in the United States District Court for the Western District of Pennsylvania [Case No. 21-cv-00904] on July 14, 2021 (the "District Court Action").

10. According to the complaint filed in the District Court Action, the Debtor was allegedly working for U Lock for ten hours a day, overnight, and for four years straight *without any pay or days off on weekends or otherwise*. There is no explanation as to why the Debtor waited more than four years without receiving a penny from U Lock to file the Action.

11. As for the timing of the District Court Action, it was suspiciously filed only 6 weeks following the Pennsylvania Superior Court's decision to affirm the holding of the Westmoreland County Court of Common Pleas which found that the real property located at 1410 Route 30, North Huntington, Westmoreland County, PA with County Tax Map Number 54-03019-0-103 (the "Property") is held in a constructive trust by U Lock for the benefit of Biros and has been held in such trust since 2015. *See Biros v. U-Lock Inc.,* 255 A.3d 489 (Pa. Super. Ct. 2021).

12. The circumstances surrounding the Debtor's alleged claim against U Lock are suspicious at best and fraudulent at worst.

13. U Lock's principals have acknowledged being served with a summons related to the Action, but have given no meritorious reason for failing to defend said Action. As a result of U Lock's failure to defend the District Court Action, the Debtor ended up with a default judgment against U Lock in the amount of $263,104.00 (the "Default Judgment").

14. The Action was an asset of the Debtor's estate and, since it was not disclosed in the Debtor's schedules as it should have been, the Action was never abandoned by the Trustee to the Debtor pursuant to § 554 upon the original closing of her case in 2018. *See Moore v. Slonim*, 426 F.Supp. 524, 527 (D. Conn. 1977) ("Because plaintiff did not list this chose of action as an asset of the estate, he cannot claim an abandonment by the trustee.") (citations omitted); *see also First National Bank v. Lasater*, 196 U.S. 115, 119, (1905) ([i]t cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate

in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it. If the claim was of value . . . it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts, and still assert title to the property).

15. Thus, when the debtor attempts to pursue an unscheduled claim in subsequent, non-bankruptcy litigation, the court should conclude that the debtor lacks standing to raise the claim, *see generally, Moore*, 426 F.Supp. 524, and that the party is "forever barred from asserting such claim subsequent to discharge by a bankruptcy court." *Everhart v. United Refining Co.*, Case No. C79-1555-Y, at *12 (N.D. Oh. Dec. 16, 1980) (relying on *Moore* and *Lasater)*.

16. As set forth more fully in the motion for relief from stay that Biros will be filing simultaneously with this Response, Biros seeks to vacate the Default Judgment that the Debtor obtained against U Lock on the basis of fraud. The Debtor has manufactured the underlying claim in the Action, used the Default Judgment as a manufactured basis for the involuntary petition against U Lock (to which U Lock consented) to the detriment of Biros, and now seeks to use it to continue to assert an interest in the U Lock case when she really has no standing there at all.

17. It has become apparent through the U Lock Bankruptcy and the District Court Action that this alleged claim based on "wages" is nothing more than a further attempt to harass Biros and impede Biros' ability to exercise complete ownership over her Property.

18. In fact, in a last-ditch effort to strip Biros of her lawful ownership of the Property (ownership which has been affirmed by the Pennsylvania Supreme Court), the Debtor has recently purchased "all rights" that U Lock has to the Property, intending to bring some sort of "avoidance action" related to the Property. Based upon the state court decisions, U Lock has no interest in the Property whatsoever.

19. Despite her pending bankruptcy, lack of assets and income, the Debtor purchased those "rights" and "interests" in the Property, as well as the ability to bring various claims and causes of action pursuant to 11 U.S.C. §§ 547 and 548, from the U Lock Trustee for $70,000 on December 15, 2022 (the "Sale").

20. Res judicata bars any court from making a contrary decision on the ownership of the Property.

21. At the end of the day, the Sale is another attempt of the Debtor to gain standing to commence vexatious and harassing litigation against Biros. Neither the Debtor nor U Lock have any meritorious claims to the Property, but they continue to bring spurious claims against Biros with the hopes that Biros will simply stop fighting and give up the Property to either the Debtor or her siblings.

22. As a result of the Sale, it is likely that further vexatious litigation will be commenced against Biros either by the Debtor or by an assignee or successor of the Debtor.

## **ARGUMENT**

23. Biros respectfully requests that this Court deny the Motion due to (a) the facts and circumstances surrounding the Debtor's alleged claim against U Lock, (b) the Motion's failure to provide interests to claimants and/or to account for potential late-filed claims, and (c) because the Motion does not satisfy the *Martin* factors.

**A. The Motion and Proposed Stipulation Eliminate the Trustee's Ability to Seek Payment from Debtor's Principals and is Based on the Debtor's Fraudulent Claim**

24. At its core, the Motion and the underlying stipulation perpetuate the myth that the Debtor has a valid claim against U Lock related to wages without any proof that the Debtor actually provided any services to U Lock.

25. Further, to the extent that any such claim of the Debtor is legitimate, the stipulation does not address the potential claim that the Trustee has against U Lock's principals, Kash and George Snyder, pursuant to the Pennsylvania Wage Payment and Collection Law which holds these principals personally liable.

26. Any claim that the Debtor holds against U Lock is a general unsecured claim and it is unlikely that there will be any distribution to U Lock's general unsecured creditors as the case is administratively insolvent.

27. If the Debtor were concerned about actually receiving payment on her alleged claim, she or the Trustee could (and should) proceed directly against George Snyder and/or Kash Snyder. The only conceivable reason why the Debtor has not attempted to proceed against George Snyder and/or Kash Snyder in light of U Lock's bankruptcy and U Lock's bankruptcy being administratively insolvent is that the Debtor has colluded with U Lock, George Snyder, and Kash Snyder in obtaining this Default Judgment against U Lock and these parties seek instead to unlawfully and vexatiously attempt to go after Biros and her Property instead, despite there being no legal basis to do so.

28. It is clear that the Debtor does not intend to pursue Kash Snyder or George Snyder with regard to the Default Judgment and the related unpaid wages, but the Trustee should not be required to give up that potential avenue to receiving payment for the creditors, including his own Administrative Expense claims.

29. Granting the Motion will provide the Debtor with further fuel to proceed with vexatious litigation against Biros, but it will not result in any benefit to the estate.

30. The circumstances surrounding the sudden discovery of the Debtor's Action as an asset of the estate should prevent the Debtor from her attempt to benefit from such an undisclosed asset.

31. The Debtor has been playing fast and loose with this Court – and with the District Court for the Western District of Pennsylvania – and should not now be permitted to obtain an exemption on *any* portion of the Default Judgment arising from the undisclosed Action.

32. "An exemption in estate assets provides an honest debtor with an opportunity to pursue a fresh start." *In re Fox*, 80 B.R. 753, 758 (Bankr. W.D. Pa. 1987).

33. Just like the debtor in *In re Fox*, "the honesty and sincerity of this Debtor is in doubt, and equally clearly, this Debtor has manipulated this estate so as to utilize its assets to her benefit and to the detriment of its creditors." *Id.*

34. Any attempt by the Trustee to "settle" the exemption of Debtor related to the Action should be denied. To the extent that the Action has value, the Debtor's attempts to exempt any portion of it should be scrutinized by this Court. The Debtor has demonstrated her lack of candor with the Court and, as she lacks the honesty and sincerity required for the exemption of estate assets with regard to the Action, she should receive *no* exemption, in any amount, for any recovery related to the Action.

35. Separate from the fact that the Debtor cannot be trusted to act on the benefit of creditors, the Debtor has not even attempted to exempt any portion of the recovery on the Action. *See* Doc. No. 59. The Motion is not a proper forum for apparently attempting to exempt all but $32,500 of any recovery on the Action, particularly where the Debtor has not attempted to exempt any portion of the Action previously in her schedules and where creditors and parties in interest have not been provided with proper notice to object to the proposed exemption. *See* Fed. R. Bankr.

P. 4003(b)(1) (a party in interest has thirty days from the later of the 341 meeting and a debtor's amendment to the debtor's list of exemptions to object to a debtor's proposed exemptions). The Debtor has failed to list the Action as a proposed exemption on her schedule of assets required by Rule 1007 and has effectively waived any exemption in the Action.

36. To the extent that any recovery related to the Action is appropriate, the Trustee is the appropriate party to pursue that action honestly and as the fiduciary of the creditors and parties in interest. To put the creditors' recovery at the hands of a dishonest debtor is a true disservice to the estate's creditors and further enables the Debtor to continue her deceitful antics.

37. If the Debtor were paying $32,500 into the estate in a sale format, then such a sale might be reasonable. But this Motion should not be granted on the basis of a non-existent exemption under the guise that the Debtor will actively pursue recovery for the benefit of her creditors.

**B. The Motion Fails to Account for Late-Filed Claims and/or Interest on All Claims**

38. The Motion and related stipulation does not provide for any interest on the claims against the Debtor.

39. Here, assuming that the Debtor's allegations are true, the Debtor and/or Trustee would have had the opportunity to prosecute this Action in 2018 when this Case was originally filed. It is now more than four and a half years after the Debtor originally filed this Case and the Debtor's creditors have not received a penny on their claims, despite the fact that there was apparently a valuable and undisclosed claim held by the estate this entire time.

40. If the Debtor's claim against U Lock is legitimate and had the Debtor been forthcoming to the Court and the Trustee, the Debtor's creditors would have already received payment on their claims.

41. The delay has been caused solely by the Debtor's actions and the Debtor should not be rewarded for her perjury by maximizing any recovery she receives to the detriment of her creditors.

42. All creditors of the Debtor and her estate should be paid in full, with appropriate interest, before the Debtor receives any recovery.

43. Similarly, the Debtor's malicious and spurious against Biros – both in the past and as anticipated in the future – may give rise to a contingent claim against the Debtor for Rule 11 violation or other damage. Even if such a claim is filed later and filed after the bar date, it is entitled to payment prior to any surplus going to the Debtor.

44. Further, in addition to any claim that Biros may have against the Debtor, the Debtor's history of conveniently omitting important facts and information supports the notion that there could be additional, and substantial, claims against the Debtor by parties who have not received notice of her bankruptcy.

45. To the extent that any other parties file proofs of claim after the bar date which are otherwise valid, but for their being filed late as a result of excusable neglect or other reason caused by the Debtor, such claims should also be paid prior to any recovery by the Debtor.

46. There are far too many questions surrounding the Debtor's Default Judgment claim and the proposed stipulation related to the Motion.

**C. The Proposed Settlement between the Trustee and the Debtor do not Satisfy the *Martin* factors.**

47. The Motion mentions the *Martin* factors in passing, but it does not attempt to demonstrate how or why these factors are met and support the approval of the Motion.

48. In *Myers v. Martin (In re Martin)*, 91 F.3d 389, 391 (3d Cir.1996), the court provided four criteria for a court to consider when faced with a proposed settlement: "(1) the

probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393.

49. Despite the Trustee's assertions that he has considered the *Martin* factors in proposing this settlement, with the Debtor, none of the four considerations weigh in favor of granting the settlement.

50. Assuming that the Default Judgment is valid and not based on fraud (an assumption which this proposed settlement appears to be founded upon), the first three factors weigh against granting the settlement. The Debtor has already obtained default judgment so the probability of success in litigation is not a question: this is simply a claim which the estate already holds. For the same reason, the complexity and expense of the litigation is also a non-issue.

51. With regard to the collection, however, the proposed settlement actually restricts the Trustee's ability to collect on the Default Judgment. The U Lock principals are directly liable for the Default Judgment under Pennsylvania law. However, the Motion and the settlement provide the Debtor with the exclusive right to seek to collect on the Default Judgment (with a minimal amount to then be provided to the creditors) and she plans to obtain a recovery through the U Lock Bankruptcy which, again, is administratively insolvent.

52. By granting this Motion, the Trustee is prevented from acting on behalf of the estate's creditors to seek payment of their claims through means that are currently available to him and which are much more likely to result in a recovery for the creditors than the "solution" presented by the Debtor. As such, the third *Martin* factor also weighs in favor of denying the Motion.

53. Finally, for the reasons stated above regarding the inability to collect on the Default Judgment without further involvement of the Trustee, it is clear that the Motion and the proposed settlement is detrimental to the interests of the creditors involved.

54. The Debtor does not have any motive for obtaining recovery for her creditors and her deceitful actions thus far are demonstrative of her malicious intent toward her creditors.

55. The *Martin* factors have not been established and, in fact, none of the *Martin* factors support the Motion or the underlying settlement.

## CONCLUSION

56. For the reasons set forth above, the Motion and the stipulation have the potential of causing substantial harm to the estate and to the Debtor's creditors. Neither the Trustee nor the Debtor have set forth a valid basis as to why the Debtor should be provided with the opportunity to benefit from her misdeeds at the expense of her creditors and other parties in interest. Further, each of the *Martin* factors weigh against granting the Motion.

57. As such, Biros respectfully requests that this Court deny the Motion.

WHEREFORE, Christine Biros respectfully requests that this Court (i) enter an order denying the *Trustee's Motion to Approve Settlement of the Exemption of Debtor's Assets* and (ii) grant such other and further relief as is just and proper.

Dated: December 27, 2022	BERNSTEIN-BURKLEY, P.C.

By: */s/ Sarah E. Wenrich*
Robert S. Bernstein (PA ID No. 34308)
Sarah E. Wenrich (PA ID No. 325834)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
swenrich@bernsteinlaw.com

*Counsel for Christine Biros*