1    IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PA.

2                            CIVIL DIVISION

3                               * * *

4    CHRISTINE BIROS,                )
                                     )
5                    Plaintiff,      )
                                     )
6            vs.                     )      No. #4486 of 2017
                                     )
7    U-LOCK INCORPORATED             )
                                     )
8                    Defendant.      )

9                               * * *

10

11                       HEARD:  4/22/2022

12              BEFORE:  Harry F. Smail, Judge

13                               * * *

14                       MOTION TO STRIKE

15                               * * *

16                    A P P E A R A N C E S

17   On behalf of the Petitioner:
             J. Allen Roth  Esquire
18

19   On behalf of the Respondent:
             William E. Otto, Esquire
20

21

22

23

24

25

1

INDEX

WITNESS:                                                              PAGE:

2

CHRISTINE BIROS

3

Direct Testimony by Ms. Biros

4

5       GEORGE SNYDER

6       Direct Testimony by Mr. Snyder

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              4/22/2022 - 10:30 a.m.

2              P R O C E E D I N G S

3                    * * *

4              THE COURT:  We will call the case in

5    regard to Christine Biros an individual as plaintiff

6    versus U-lock Incorporated, a Pennsylvania corporation

7    as the defendant at the Court of Common Pleas level

8    #4486 of 2017.  The court will note Mr. Roth that you

9    filed this under a caption indicating Christine Biros,

10   plaintiff v. Denise Shore, executor of the estate of

11   Alex Shore, Emory L. Moore, and Susan Stano co-executor

12   of the estate of Nicholas Shore, Cathleen S. Walter,

13   executor of the estate of Michael Shore, Cynthia Sear,

14   administrator of the estate of Ann Sear, and U-lock

15   Incorporated as a Pennsylvania Corporation, the

16   defendant at case #4886 of 2017.  Although there was a

17   prior order of court that struck all of those parties.

18   So why did you file your motion in that fashion because

19   clear up through the Supreme Court filings it is

20   Christine Biros as the plaintiff and/or respondent and

21   U-lock Inc, a Pennsylvania Corporation, as the

22   petitioner or the defendant.

23              MR. ROTH:  You are right, Your Honor.  It

24   should have been done that way.

25              THE COURT:  It should not have been done

1    that way.  You filed this at the Prothonotary of Record

2    and indicated all of these parties and it is now on

3    record based on your filing as of March 17th of 2022.  I

4    need an answer as to why you are basically violating my

5    order of court.

6                    MR. ROTH:  I am not wanting to violate

7    the order.  It should have just been done the other way.

8    I am sorry about that.  It should have just been done

9    the other way.  You are right about that.

10                   THE COURT:  The problem is that it

11   includes parties that are not subject to the litigation

12   and gives the impression to the public and the

13   Prothonotary filed that they are still subject to the

14   litigation when in fact they were stricken because they

15   were not parties.

16                   MR. ROTH:  I understand.

17                   THE COURT:  I am going to order you to

18   file some kind of a corrective order that indicates that

19   the motion was filed under this caption that should have

20   been filed under the other caption and request that the

21   court order the Prothonotary to note that in the record.

22   So it could be a one page order with the way it was

23   filed under caption, what caption should be, and then an

24   order of court reflected below saying the Prothonotary

25   is to note this in the file by way of corrections.

1              MR. ROTH:  That is fine.

2              THE COURT:  So you do a cover motion and

3    then you ask for an order so that I can get that

4    corrected in the Prothonotary's file so should anyone

5    look for that file or by way of further appellant action

6    they will know these other parties are not subject to

7    the inclusion because I am concerned that you are going

8    to ask law clerks or the Prothonotary in different

9    stages that are going to say, "Well, this is incorrect

10   because you do not have all of the parties."  Because

11   they are going to have problems with the record and

12   everything because they are going to say that you did

13   not serve due notice when in fact buried in the past is

14   my order of court that struck them off.

15             MR. ROTH:  I understand that.

16             THE COURT:  I just wanted you to note

17   that so if you can get that fixed some time by the

18   middle of next week so we can get that corrected.

19             MR. ROTH:  That would be fine.

20             THE COURT:  We are here on your motion

21   and I will let you go ahead and proceed.  That is the

22   petition to strike the order of January 20th, 2022 and

23   all the other considerations.  You are free to proceed.

24             MR. ROTH:  Before the court is U-lock's

25   omnibus motion for relief based on this court rendering

1   an order without notice to it on January 20th, 2022.

2   That order released deeds that were in the court's

3   custody to Christine Biros.  I am not sure how or why

4   this order was issued.  No notice was provided to me and

5   it is unclear if counsel for Christine Biros asked for

6   this court to issue the order or if this court just

7   issued the order on its own.  Either way U-lock has a

8   due process right to be noticed and to be heard.  While

9   the Supreme Court denied leave to appeal it did not

10  remand the record to this court.  The court was and

11  still is without jurisdiction.

12               When the court entered the order it

13  states that notice was given as required by Rule 236.

14  However, there is no CC at the bottom of the order and

15  my office did not receive it.  Therefore, there is no

16  certification that it was served or mailed to my office.

17  We believe the notation in docket is in error.  It was

18  mailed to us.  If it was mailed to us, who mailed it to

19  us and where is the designation that that happened?  So

20  we had no idea that this happened.  Because we did not

21  know about the order and no notice was given to us that

22  anyone sought or planned on issuing an order we could

23  neither appeal or seek reconsideration.  In the interim,

24  we received a stay from remanding the record from the

25  Supreme Court on March 16th, 2022 and they still have

1   the case.  That order was served on this court by the

2   Supreme Court.

3                  There are several reasons why this order

4   is prejudicing us.  First, both this court and the

5   Superior Court held that the corrective deeds granted to

6   U-lock were valid and legally transferred ownership.

7   This court ruled that Christine Biros gets the property

8   through a constructive trust and the Superior Court

9   agreed.  So the deeds cannot be from the original seller

10  to Christine Biros.  They must be judicial deeds from

11  U-lock as trustee for Christine Biros to Christine

12  Biros.  There are serious tax consequences for U-lock

13  and potential investor law suits for U-lock shareholders

14  as a result of the way this happened.

15                 Simply put, we believe that the order was

16  improperly entered without notice to us.  So we ask for

17  it to be stricken.  Christine Biros can seek proper

18  judicial deeds as soon as the record is remanded.  Those

19  deeds must be from U-lock as trustee in a constructive

20  trust to Christine Biros.  Alternatively, if this court

21  feels that it does have jurisdiction it must serve the

22  order on my office under rule 236 and correct the docket

23  to show the date.  That correction will allow U-lock to

24  appeal the order so the appeal court can determine if

25  the court had jurisdiction.

1          THE COURT:  Mr. Otto, would you like to

2    respond to his motion and then we will move to your

3    motion once we are concluded here and you will have a

4    chance to respond.

5          MR. OTTO:  Your Honor, I am pretty

6    disappointed in Mr. Roth.  You could conclude from his

7    discussion that he has a real concern about legal

8    process and procedure.  Unfortunately, he has failed in

9    his duty of candor to this court because he had not

10   explained why they want these deeds to be withdrawn and

11   new deeds to be ultimately reissued.  The reason is

12   because approving his motion would effectively result in

13   returning the property to U-lock permanently and

14   depriving my client of the property both in title and

15   possession.

16          The reason for that is because in August

17   of last year Shanni Snyder, the sister of George and

18   Cash Snyder who are the controller parties of U-lock

19   filed an action in several district courts.  As a result

20   of that she got a default judgement against U-lock for

21   unpaid wages.  Now the interesting thing -- and I have a

22   couple of documents to deliver.  This is all evidence,

23   Your Honor.  None of this is contrived or made up.  That

24   is the docket sheet for the case.  This is Shanni

25   Snyder's complaint where she claims that she worked for

1   U-lock from 2016 through 2020 for ten hours a day from

2   the hours of 5 P.M. to 3 A.M. monitoring video cameras

3   on the property and that she is owed back wages in the

4   amount of over $130,000.  After she filed that case --

5   now one quick comment about her claims that she worked

6   for U-lock, Your Honor, during the trial Mr. Cash Snyder

7   was questioned.  That is a copy of the relevant pages of

8   the transcript.  If I could read this?

9              THE COURT:  You may.

10             MR. OTTO:  Question:  To your knowledge

11  did anyone help Mr. Roth with the plea or the documents

12  that have been filed?

13             Answer:  To my knowledge?  No.  I know

14  his paralegal and my sister and George have been

15  helpful.

16             Question:  What involvement did your

17  sister have in all of this?

18             Answer:  Just like you said helping with

19  the documents.

20             Question:  But she is not a shareholder,

21  director, or officer, correct?

22             Answer:  Correct.

23             Question:  Is she like a friend to the

24  court?

25             Answer:  No.  She is loved one, I guess.

1          Question:  What is her background?

2          Answer:  Nothing.  Nothing legal if that

3   is what you are asking.  She is just a run-of-the-mill

4   layman.

5          Question:  What involvement did she have

6   in the company?

7          Answer:  None in the company.

8          If I may continue, You Honor?

9          THE COURT:  You may.

10          MR. OTTO:  Service was made on Mr. George

11   Snyder.  I have proof of that service.  As a result of

12   the failure to respond either by filing an answer to the

13   complaint or showing up for the dispute resolution Ms.

14   Snyder filed a motion for default judgment for back

15   wages and post- and pre- judgement interest in the

16   amount of over $130,000.  The second page of that, Your

17   Honor, is just the service.  As a result of that motion

18   Judge Colville in federal court authorized the default

19   judgement and scheduled an evidentiary hearing.  So an

20   argument was held.

21          If you turn to the very last page, Your

22   Honor, you will see the order remarks.  Mostly it says

23   that the court notes it has reviewed the entire record

24   prior to hearing, law clerk administers oath to

25   plaintiff, plaintiff testifies, court finds that default

1   judgement is appropriate and applies reason.  That is

2   the sole substance of the matter in the federal court

3   except that the court then entered an order granting Ms.

4   Snyder her claim for the $130,000 but also awarded an

5   additional amount of liquidated damages of another

6   $131,000.  It is not clear to me how she got that but

7   nevertheless that is in her judgement.  Again, Your

8   Honor, keep in mind that this was a default judgement by

9   their sister.  So they got this judgment.  Why would

10   they go to this trouble and why wouldn't Mr. Roth

11   explain this?  Near the last of the docket sheet that

12   you have, Your Honor, you will see that she got an

13   abstract which she then transferred to Westmoreland

14   County.  The abstract says at the very top -- first off,

15   it is a judgment for $262,702 and $402 in cost.  It says

16   at the top pursuant to title 28 -- I will give you a

17   copy of this so you can follow along.

18          This judgement upon the filing of this

19   abstract and the manner in which a notice would be filed

20   under paragraphs 1 and 2 of 26C6323 creates a lien on

21   all real property of the defendant and has priority over

22   all of the liens and encumbrances that are protected

23   later in time.  The lien created by this action is

24   effective unless satisfied for a period of 20 years.

25          Now this is where we get to the crux of

1    the problem, Your Honor.  Back in May of 2019 after the

2    trial in which you had dismissed the estates part of the

3    arrangement with the estates is that they would pay

4    $10,000 which they paid and which I applied to the

5    taxes.  The second part of that was that they would

6    deliver 8 deeds total.  Four of which confirmed the

7    title of the property in U-lock and four of which voided

8    U-lock's deeds and transferred the title directly from

9    the estates to my client.

10              Now the fly in ointment that Mr. Roth has

11   not explained are is that those deeds are all dated May

12   of 2019 which predate Shanni Snyder's judgement.  So if

13   you approve their order and the title goes back to

14   U-lock that lien will stay on there no matter what else

15   happens.  They have locked this up.  Now if you go back

16   to Mr. Roth's motion for a moment.  Mr. Roth has made

17   some interesting statements and when I initially read it

18   my thought was why would he assert the improper action

19   by a judge in which he asked to practice?  Why would he

20   assert that there was some action on the part of the

21   judge that resulted in a loss of U-lock's civil rights?

22   The only thing I can say, Your Honor, is that you have

23   that in front of you.

24              I believe that Mr. Roth knew about this.

25   He was in a panic to get the motions in front of you to

1  change the deeds and he has failed to explain the full

2  background of why this is important to U-lock.  My

3  recommendation to Your Honor is that I believe that you

4  could go one of three ways.  Obviously you could approve

5  his motion.  Second, you could deny it outright.  Third,

6  which I suggest is that you take it under advisement and

7  hold it on the off chance that Mr. Roth might later want

8  to withdraw the motion.  Primarily I think that Mr. Roth

9  has been involved in this.  I think that there has been

10  a lot of improper activity in this case and I believe

11  that that judgement that Shanni Snyder got in court is a

12  fraud on the federal court and could potentially be a

13  fraud on this court.

14            I do not think it is my client's

15  responsibility to investigate that fraud.  I think that

16  should go to law enforcement to investigate.  I think

17  there are some serious problems with Mr. Roth's behavior

18  and I think there are some serious problems with Mr.

19  Snyder's behavior.  Unfortunately as we heard during the

20  course of the trial the Snyders either do not have or

21  have effectively hidden all of their assets but Mr. Roth

22  has his own assets and I think there should be

23  sanctions.  That is why I have submitted a motion of

24  sanctions to you.

25            A good part of Mr. Roth's motion should

1   be considered moot after he received the denial of his

2   petition to the Pennsylvania Supreme court.  That was

3   issued in January of this year.  He asked for a delay in

4   the remand so they could file an appeal to the U.S.

5   Supreme Court.  Their time to do that was the close of

6   business on the 19th of this month.  Unless Mr. Roth is

7   willing to stand up and say an appeal has been filed I

8   checked the docket yesterday and there is no U.S Supreme

9   Court appeal or petition.

10               THE COURT:  Mr. Roth, did you file for

11   certiorari?

12               MR. ROTH:  I have not to my knowledge.

13               THE COURT:  So the order from the

14   Superior Court is a denial in January with leave of

15   court that gives you 90 days to file for writ of

16   certiorari to the U.S Supreme Court.  You have not filed

17   that.  After the denial your position is that it was not

18   appropriate to allow for the deeds to be ordered in the

19   fashion the court did in January 20th because they did

20   not submit the record back.  You were denied your

21   appeal, correct?

22               MR. ROTH:  I understand that.

23               THE COURT:  You had the opportunity to

24   file a writ of certiorari to the U.S Supreme Court like

25   you represented to the Superior Court of Pennsylvania

1    that you were going to do.  You did not do that.  What

2    basis do you have for me to reverse or vacate my January

3    20th order other than your claim that because they held

4    the record I am outside of my jurisdiction which is not

5    accurate because the Common Court of Pleas can still

6    move forward on various issues to continue to protect

7    the parties relative to a prior action especially after

8    a denial of appeal is rendered by the last appellate

9    court in the Commonwealth of Pennsylvania.

10                  MR. OTTO:  Your Honor, if I may, I have

11   one other item.  This probably has slipped your

12   recollection but when the arrangement was made with the

13   estates to issue those deeds, those deeds were reviewed

14   by both Mr. Roth and I.  There were changes made as a

15   result of our request --

16                  THE COURT:  There was also a monetary

17   component of the $10,000 which was provided, accepted,

18   cashed out, and received.

19                  MR. OTTO:  Yes.  So Mr. Roth had the

20   opportunity to object to those deeds at the time.  He

21   had the opportunity to object to the delivery of those

22   deeds or of the transfer of those deeds in his appeal

23   and he failed to do that.  He is now trying to come back

24   and say we should have to go through another procedure

25   to open that up.  of course with the judgement of the

1    federal court you can see what that would result in.

2               THE COURT:  Mr. Otto, while I have your

3    attention, in January of this year did you and I have

4    any communication because I cannot recall any

5    communication?

6               MR. OTTO:  You and I have never spoken

7    outside of this courtroom.

8               THE COURT:  The only thing that we

9    received was notice from the Supreme Court that the

10   appeal was denied and then obviously the deeds that were

11   escrowed were now available for release.

12              MR. OTTO:  My paralegal called your

13   office.  I did not speak to you or your office.  My

14   paralegal called and said we got the Supreme Court

15   decision.  We would like to pick up the deeds.  Do you

16   want us to submit an order or do you want us to send you

17   a letter?  How do you want us to proceed?  What was told

18   to us was to prepare an appropriate order and you would

19   review it.  That is what we did.  At no time did you and

20   I speak.

21              THE COURT:  Your office fulfilled the

22   directive of my law clerk simply to submit an order from

23   you for me to consider unilaterally.  Based upon that

24   any allegation of *ex parte* communication or misconduct

25   by this court are not valid.

1          MR. OTTO:  I would agree with that, Your

2   Honor.

3          THE COURT:  Then your belief or the other

4   assertion that it was *sua sponte* done by my own volition

5   is not accurate either because it was triggered by the

6   Supreme Court's denial from the Pennsylvania Supreme

7   Court it's denial and then you simply acknowledging

8   through your law clerk that now the escrow deeds can be

9   released.  That was done by staff to staff not you and

10  I.

11         MR. OTTO:  Correct, Your Honor.

12         THE COURT:  Thank you.  I wanted to make

13  sure we have that clear on the record.

14         MR. OTTO:  Yes, sir.  That is frankly why

15  Mr. Roth's allegation is so disturbing because it is a

16  serious charge.  If the stakes were high enough I might

17  make that assertion.  If this was a murder trial and I

18  thought that there something improper I might make that.

19  Short of that I would not put it in a pleading, Your

20  Honor.

21         THE COURT:  I appreciate that.  Thank

22  you, Mr. Otto.  Mr. Roth, we are back to you then.

23  After the denial of your appeal by the Pennsylvania

24  Supreme Court and your position -- I am trying to wrap

25  myself around the argument why I do not have

1    jurisdiction at that point in time to release the deeds

2    which is the last component of the Common Pleas court

3    case because you had leave to file for certiorari to try

4    to establish a U.S. Supreme Court issue related to this

5    case but you did not even go to that measure to do it so

6    why would I vacate this order at this time?  If you can

7    connect all that together for me and explain it I am

8    certainly available to take all of this under advisement

9    and proceed accordingly.

10                   MR. ROTH:  It was our belief that until

11   they remand the case to here that you did not have

12   jurisdiction.  That was our belief.  That is why we

13   filed --

14                   THE COURT:  They did not remand it here

15   because you requested that they held the record and stay

16   the record's transmission.  That does not stop their

17   denial which they denied.  They did not grant you the

18   appeal.  So then do I -- I guess my question is do you

19   have any precedent law that would indicate then that the

20   Common Pleas court then could not close any remaining

21   legal loop holes that are still out there and are not

22   completed because you exhausted all of your appeals

23   through the Commonwealth of Pennsylvania?

24                   MR. ROTH:  I understand that.  Could I

25   have one moment to consult with someone from U-lock?

1      THE COURT:  That is fine.  Let us take a

2  ten minute break and we will reconvene at 11 o'clock.

3      RECESS TAKEN AT 10:50 a.m.

4      COURT RECONVENED AT 11:00 a.m.

5      THE COURT:  Mr. Roth, you have had an

6  opportunity then to speak to your client?

7      MR. ROTH:  Yes.  I did.  The first thing

8  that I can say, judge, is that with regard to Shanni

9  Snyder I did not know anything about any of that stuff

10 that went into evidence here.  I had nothing to do with

11 it.  I did not know anything about it.

12      THE COURT:  How could you not know about

13 it?

14      MR.  ROTH:  I did not.

15      THE COURT:  You represent U-lock,

16 correct?

17      MR.  ROTH:  That is true.

18      THE COURT:  They are the defendant in a

19 western district federal action and you did not know

20 about it?

21      MR. ROTH:  I did not even know that they

22 were a defendant.  I did not know that.

23      THE COURT:  Are you the advertised

24 counsel for the corporation?

25      MR. ROTH:  I do not know if I am

1   advertised.

2                   THE COURT:  Well, Shanni knows it,

3   correct?  She knows that you are the attorney, right?

4   Did she serve you?

5                   MR. ROTH:  She probably does but I was

6   not served at all.  I did not know anything about this

7   stuff.  I really did not.

8                   THE COURT:  Then who got served then

9   Mr. Roth because I see that no one responded but the

10  Western District court was satisfied that it met all of

11  the federal rule requirements for notification and

12  service.  So someone either had to sign it or a process

13  handler slapped it on someone's chest.  You were not

14  made aware of any of that?

15                  MR. ROTH:  I did not know anything about

16  that until today.

17                  THE COURT:  Do you understand Mr. Otto's

18  position that that federal lien attaches immediately

19  should I have reversed or in other ways vacated my order

20  of court?

21                  MR. ROTH:  Well, I did not know that but

22  I understand what you are saying.

23                  THE COURT:  Do you understand that now?

24                  MR. ROTH:  Yes.  I do.

25                  THE COURT:  Anything further you want to

1    make with regard to your argument?

2              MR. ROTH:  No.  That is all I have.

3              THE COURT:  Mr. Otto?

4              MR. OTTO:  If I could just add two more

5    things.  As I am sure you are aware, when the Supreme

6    Court responded to Mr. Roth's request for a delay and

7    remand in the record at my request they directed U-lock

8    to pay the unpaid property taxes on the property.  That

9    is the second page of that docket, Your Honor.

10             THE COURT:  That is correct.  That is the

11   March 16th, 2022 order by the Pennsylvania Supreme

12   Court.

13             MR. OTTO:  Yes, sir.  As of yesterday

14   those taxes remain unpaid and accruing interest.  It has

15   been over three months.

16             THE COURT:  Mr. Roth, in relation to your

17   representation it appears there is an amount of

18   $20,151.02 in outstanding taxes that are owed.  This

19   order was issued March 16th, 2022.  We are now in April

20   22 of 2022.  Why aren't the taxes paid?

21             MR. ROTH:  We expect those to be paid

22   within 14 days, Your Honor.  That is where we are.

23             THE COURT:  No partial payment?  Nothing

24   came in during the intervening time from the order apart

25   from the Pennsylvania Supreme Court?

1              MR. ROTH:  I was just told that it will

2    be paid within 14 days.

3              THE COURT:  Well Mr. Otto, there is your

4    answer.  That is what they are claiming will occur.

5    Anything further Mr. Roth on your motion because I have

6    two motions from Mr. Otto relative to his presentation.

7              MR. ROTH:  Nothing further.

8              THE COURT:  Mr. Otto, you can proceed

9    with your motion.

10              MR. OTTO:  I do have one last item in

11   this case, Your Honor.  This is a *praecipe* in a matter

12   that Shanni Snyder currently has in this court.  What

13   she says is pretty clear there.  She says she is a

14   judgement creditor of U-lock and I presume that is based

15   on her federal court judgement that we have been

16   discussing.  It also says -- it is represented that she

17   has a lien on the above referenced property.  If you

18   look at the next page that is a legal description of the

19   legal property we have been discussing.  As you know,

20   Your Honor, this is an invalid and untruthful filing.

21              THE COURT:  Yes.  There is no way she can

22   have a lien on property that U-lock does not necessarily

23   owned by way of the escrow deeds.

24              MR. OTTO:  Obviously she is not in the

25   court and this is not your case in front of you.  I also

1    noticed you are a party.

2                    THE COURT:  I am.

3                    MR. OTTO:  I thought you might be

4    interested in understanding that she has committed

5    perjury by signing a filed document with this court.

6                    THE COURT:  Mr. Roth, do you want to even

7    address that relative to the Shanni Snyder case versus

8    your client, myself, other attorneys, the attorney

9    general of Pennsylvania.  She has sued pretty much the

10   law here.

11                   MR. ROTH:  I am sorry.  There is nothing

12   I can say about it.

13                   THE COURT:  You do not know if what she

14   represented to the court is verifiable and verified as

15   authentic for true representation to the court?

16                   MR. ROTH:  I do not know anything about

17   it.

18                   THE COURT:  She is not your client?

19                   MR. ROTH:  She is not.  No.

20                   THE COURT:  Obviously Mr. Snyder that is

21   your sister.  It may be wise to warn her that if these

22   things are filed in either a misrepresentative fashion

23   or an ignorant fashion or with intent to defraud anyone

24   relative to the cases that it could resolve not on the

25   civil division but it could resolve in the criminal

1   division.  That being stated I am simply putting that

2   there for your consideration that certainly she should

3   consult with an attorney relative to that.

4              As far as what her designated category is

5   because she has a federal lien I do not know if it

6   allows for her to be the plaintiff party in this case or

7   not but if it is a falsehood that she bases it upon and

8   it comes to the surface because the courts are involved

9   and the county is involved through Frank Schiefer, the

10  reporter of deeds.  There are mandatory reporting

11  requirements relative to misconduct even by a *pro se*

12  litigant that could result in a criminal review.  I am

13  not sure if he would be interested in pursuing it but I

14  can tell you that Josh Shapiro and the Attorney

15  General's office if they think there is some malfeasance

16  may take it on themselves.  I am just, again, trying to

17  articulate that for that information to be passed

18  forward.  Okay?  Mr. Otto, you have two motions so let's

19  begin.

20             MR. OTTO:  Let me address the motion for

21  sanctions first.  Although it is much thicker it is a

22  lot simpler.  Basically, Your Honor, from the beginning

23  of this case all the way through to Mr. Roth's filing of

24  the petition for allowance with appeal to the Supreme

25  Court Mr. Roth has made allegations on behalf of his

1   client that my client has been involved in wrongdoing

2   and that the source of her funds renders her claim

3   invalid.  At every stage the courts have said it is not

4   relevant and yet he has continued to assert that.  My

5   client has been damaged by that and I would like the

6   court to entertain this motion for sanctions against

7   Mr. Roth and his client.

8                THE COURT:  The sanction amount that you

9   are requesting is an amount of $20,000 which appears to

10  be large.  If you can give me some factual basis why, is

11  there some kind of attorney client billing or something

12  that is --

13               MR. OTTO:  I have detailed billings, Your

14  Honor, that I would be happy to provide to the court.  I

15  obviously do not have them with me.

16               THE COURT:  I would ask that you submit

17  those especially with the portions highlighted as to the

18  substance of your request for sanctions and how they are

19  associated with it or actually reflective of your

20  billing because I must review that before I can even

21  entertain a sanctioned order as required.  Whenever you

22  are done I will let you get the points in then I will

23  let him respond to this and then we will get to the

24  other matter.

25               MR. OTTO:  I understand.  As we all

1   understand our clients drive our general strategies.  I

2   believe that these actions were taken by Mr. Roth at the

3   urging of his client so I would ask that the sanctions

4   be imposed not only against Mr. Roth but also against

5   George and Cash Snyder in their individual capacities.

6   None of this would have happened if they had not pushed

7   Mr. Roth to do it.

8              THE COURT:  Anything further?

9              MR. OTTO:  No, Your Honor.  That is it.

10             THE COURT:  Mr. Roth, you may respond to

11   the motion for sanctions.

12             MR. ROTH:  Your Honor, the rule requires

13   we be given 28 days notice.  We have an opportunity to

14   rescind what we have done in the past.  We did not get

15   the 28 days notice in this case.  Once we get that

16   notice we can decide whether we want to withdraw it or

17   not withdraw it.  I belive that is how this works.

18             THE COURT:  I believe he is talking about

19   a course of conduct that has continued throughout the

20   case even though various order from the court both at

21   this level and the Supreme Court have been rendered that

22   you keep raising issues that Judge Marsili way before I

23   even became involved in this case ordered you not to

24   consider relative to this case.  Therefore, source of

25   funds albeit in any form or fashion had no relevance and

1    was ruled that way by Judge Marsili yet you continue to

2    raise it in your pleadings throughout.  This is not an

3    isolated one time issue in the last 28 days that you can

4    just withdraw it.  It has been going on since the

5    inception of the case.  It is my understanding that the

6    first filing was in 2017 so we are five years into this.

7    I believe that the ruling by Judge Marsili was in 2018.

8    So that was four years ago when that ruling came out.

9    My question to you Mr. Roth is why should I not be

10   compelled to consider the sanctions?

11             MR. ROTH:  Well, I believe we were

12   supposed to have an opportunity to withdraw those once

13   we get notice --

14             THE COURT:  You can withdraw within the

15   timeframe of your last pleading whatever that might be

16   within 28 days.  The question is although I have seen a

17   lot of -- I do not know how I am going to word this,

18   offensive or alarming items in your current motion but

19   that particular portion of it could possibly be

20   corrected as you are indicating but what about all the

21   dozen pleadings where your suggestion is that this is

22   ill-gotten monies utilized in the pursuit of an outcome

23   favorable to Christine Biros because that is what they

24   are asking for.  They are saying this is -- should you

25   want to take it from Judge Marsili to the present so

1   they are really reflecting on a four year pattern of

2   behavior where you keep going back to the same libelous

3   or slander-oriented generation of funds because you are

4   perceiving it or representing that it was done in some

5   criminal fashion to achieve the amount of money tendered

6   to gain the deeds.

7            MR. ROTH:  I do not really have an answer

8   for that, Your Honor.

9            THE COURT:  That is why he is asking for

10  $20,000 in sanctions because you were not deterred by an

11  order of court by Judge Marsili.  I guess my question is

12  why should I not consider their request now for

13  sanctions which probably could have been filed back in

14  the 2018 and filed multiple ones each time that you did

15  it.  Why he did not do that?  I do not know.  That might

16  mitigate whether or not he gets them.  Did he waive

17  that?

18            MR. ROTH:  I believe we have the

19  opportunity to withdraw.

20            THE COURT:  The whole thing?

21            MR. ROTH:  Yes.  All of the things and we

22  have to be given 28 --

23            THE COURT:  After the public has already

24  had access to look at it and review it and consider

25  whether or not they perceive the plaintiff, Christine

1   Biros, in a good light or a bad light?  Then what?  You

2   withdraw it and then it is as if it did not exist but

3   after that the smell is already out there.  Just because

4   you got rid of the skunk does not mean that it did not

5   already happen.

6               MR. ROTH:  We believe we should have the

7   right to withdraw for 28 days.

8               THE COURT:  What is your basis for that?

9   Do you have case law or something that supports that?

10              MR. ROTH:  I thought that the rule

11  indicated that?

12              THE COURT:  A rule of civil procedure?

13              MR. ROTH:  Rule 208 or --

14              THE COURT:  You are the one who is

15  representing the fact.  You tell me.  I will be happy to

16  look the rule up.

17              MR. ROTH:  I believe that Rule 208

18  indicates that we have 28 days to withdraw the

19  allegations.  That is what I believe.

20              THE COURT:  Do you know what subsection

21  that might be?

22              MR. ROTH:  I do not know that off the top

23  of my head.  No.

24              THE COURT:  Well rule 208 has four

25  subsections.  Would you like to look at the rule and

1  cite it for me?

2          MR. ROTH:  I will look at it.

3          THE COURT:  Come on forward.  Here you

4  go.  It begins over here and it goes over to here.  If

5  you can find it in there I would certainly like to

6  review it.

7          MR. ROTH:  May I step out into the hall?

8          THE COURT:  No.  Find it here.

9          MR. ROTH:  If I could call my paralegal I

10  would try to determine where it is at.  Can I step out

11  in the hall and call my paralegal?

12          THE COURT:  No.  There are some

13  assertions here that you have been using some other help

14  from Shanni Snyder or some person who is not licensed to

15  practice law.  So if it is your position and you are the

16  licensed attorney and you are representing to me in this

17  court that there is a Pennsylvania rule of civil

18  procedure that directs me or binds me to allowing you to

19  withdraw out of the proceedings any erroneous thing that

20  you claim you put in relative to a matter that might

21  incur damages by way of slander or libel then show me.

22          MR. ROTH:  I cannot find it.

23          THE COURT:  Any other response you want

24  to make then other than your assertion on rule 208?

25          MR. ROTH:  No.  That is all.

1            THE COURT:  Mr. Otto, you have a second

2    motion relative to possession, I believe?

3            MR. OTTO:  Yes, Your Honor.  First of

4    all, this is a declaratory judgement and under the

5    declaratory judgement act this court is entitled to

6    issue or impose any relief for the parties which it may

7    deem appropriate either before or after judgement.  So

8    with that, what I would ask for from this court is an

9    immediate writ of possession so that we can take actual

10   control of the property.  As you will note in my motion

11   number one, the taxes have not been paid.  Supposedly

12   those are going to be taken care of in 14 days.  We will

13   see.

14           The second thing is that we have received

15   citations from the township blight enforcement office of

16   North Huntington Township.  It is our understanding that

17   they have been unable to effect service of citations on

18   Mr. Snyder.  So they have been unable to enforce the

19   clean up orders against U-lock.  As a result when they

20   saw that the title were changed when we recorded the

21   deeds in January they sent my client a citation.  I

22   spoke to the code enforcement officer and he said that

23   his purpose was really to start a conversation.  We know

24   that you are not in control but we do need the property

25   cleaned out.  We cannot do anything when we do not have

1    possession of it, Your Honor.

2              The decision of the Supreme Court was

3    done.  We are entitled to possession.  There is no

4    reason that it cannot be delivered to us.  They raised

5    the issue of the tenants, it is a series of lockers and

6    storage sites.  We have no problem whatsoever, Your

7    Honor.  We will blockade the site then if they will give

8    us lists of their clients we will send out notice

9    letters to them telling them to come and pick up their

10   stuff.  If people do not come we will advertise for it.

11   At the end of that we will do what we are entitled to do

12   with unclaimed property.  In the meantime if we can get

13   possession of the property we can get it cleaned up.

14             THE COURT:  Are you in possession of

15   Mr. Roth's response?  To the form which I do not agree

16   that it is in the proper form by way of representation

17   that these are a preliminary objections they would be a

18   response to the motion for possession but the one that

19   caught my attention the most is the eviction requirement

20   relative to a declaratory judgement to possession and

21   the process attached there to.  Our view and research is

22   that possession can be granted and then if they do not

23   leave that the successive action after that is then

24   eviction.  Because you have to gain possession before

25   and be the holder of possession before eviction can be

1    instituted.  If you are not in possession or there is a

2    dispute of title then you cannot get to eviction.

3              MR. OTTO:  Your Honor, the rules of civil

4    procedure describe the action of ejectment and if we

5    were doing an action of ejectment then those are the

6    rules we have to follow.  As I said the declaratory

7    judgement act gives you the jurisdiction and authority

8    to issue any reasonable relief.  It is my view that

9    possession, if we have to, we could arrange for security

10   to go down and secure the property and take care of it

11   that way, Your Honor.

12             THE COURT:  Anything further?

13             MR. OTTO:  Mr. Roth has filed preliminary

14   objections.  There is no legal authority cited in it

15   other than a citation to the rules.  He has already

16   voiced his opinion.  My assertion goes back to the

17   declaratory judgement act.

18             THE COURT:  What is your position with

19   the form in compliance with the Pennsylvania rules of

20   civil procedure relative to preliminary objection

21   format?  I mean, it does not to appear to be anywhere

22   close to the requirement.

23             MR. OTTO:  Notice to plead is never

24   required.  The only thing about notice to plead is that

25   if it is on a pleading that the person to whom it is

1    delivered is required to respond in 20 days.  I am not

2    required to put it on.  I did not ask for a response

3    upon from him.  If I wanted him to respond then I would

4    have put it on the notice to plead.

5              THE COURT:  You simply noticed that you

6    are doing a motion.

7              Mr. OTTO:  Correct, your Honor.

8              THE COURT:  Then everyone comes to

9    motions and deals with your motion as you placed it out.

10             MR. OTTO:  I do not believe there is a

11   requirement that a notice to plead be used.  It is only

12   a requirement if there is a notice to plead that the

13   respondent must respond within 20 days.

14             THE COURT:  Preliminary objections are

15   not the appropriate response to a motion.  Obviously it

16   is a response to a motion in accordance to the

17   Pennsylvania rules of civil procedure then you can

18   request additional action as part of your pleading

19   within a second component therein, not a preliminary

20   objection to strike it as if it was part of a condensed

21   or multi-count complaint.

22             MR. OTTO:  Yes, Your Honor.

23             THE COURT:  Mr. Roth, we can go down

24   through what you filed.

25             Mr. ROTH:  First of all, the petition

1   does not have a petition for verification on it.  I

2   believe the rules require there to be a verification.

3            THE COURT:  Mr. Otto, were these filed

4   together and there was one verification by Christine

5   Biros?

6            MR. OTTO:  No.

7            THE COURT:  Were you authorized, Mr.

8   Otto, by your client to request the possession of the

9   property?

10           MR. OTTO:  Yes, Your Honor.

11           THE COURT:  Are you representing that as

12   an officer of the court?

13           MR. OTTO:  I am.

14           THE COURT:  Ms. Biros, please stand and

15   raise your right hand.

16   CHRISTINE BIROS, having been

17   first duly sworn, was examined

18   and testified as follows:

19                      * * *

20                DIRECT EXAMINATION

21   BY THE COURT:

22   Q.       Did you authorize Mr. William E. Otto to file

23   these two motions?

24   A.       I did.

25   Q.       One for possession and one for sanctions?

1    A.        Yes.

2    Q.        Do you verify that any and all information

3    therein contained therein is the truth as far as you

4    know under penalty of the law?

5    A.        Yes, sir.

6    Q.        Did you review these motions before you came

7    here today and did you review everything that was in

8    them?

9    A.        Yes, sir.

10              THE COURT:  Thank you.  You may be

11   seated.  Mr. Roth, the rule may indicate that but if

12   there is an oversight that is not fatal and she is here

13   on the record after being duly sworn in and subject to

14   perjury she did verify to the court's satisfaction that

15   both pleadings are appropriate.  Please proceed.

16              MR. ROTH:  The next thing is that there

17   are significant property rights involved in the

18   potential liabilities.

19              THE COURT:  Why are you filing this as

20   preliminary objections and not as a response to the

21   motion?  Like, two separate responses to the motion.

22   Your format is inappropriate for review by the court.

23   My question to you is why did you file it as preliminary

24   objections.  These are not preliminary objections.  We

25   already had a trial, an outcome, and an opinion.  We had

1    an appeal to the Superior Court and an appeal of the

2    Supreme Court.  We are not at the early stage of any

3    litigation.

4                    MR. ROTH:  All I can say, Your Honor, is

5    that ejecting U-lock and the tenants will result in

6    major landlord-tenant lost property actions and that

7    will cause us a lot of problems.

8                    THE COURT:  Well, it might cause

9    Christine Biros a lot of problems as well if she is an

10   attached party to any litigation that is filed against

11   U-lock is sued or if U-lock is sued by multiple

12   plaintiffs or petitioners to the court and they add

13   Christine Biros as an additional defendant.  She is not

14   necessarily escaping the hypothetical that might come,

15   correct?

16                   MR. ROTH:  Yes.

17                   THE COURT:  Anything else that you want

18   to address?

19                   MR. ROTH:  No, that is all.

20                   THE COURT:  Anything further, Mr. Otto?

21   Wait, sorry.

22                   MR. ROTH:  One more thing.  With regard

23   to the clean up of the property, Your Honor.  They have

24   contacted the North Huntington township and have begun

25   the process of doing the clean up.  Now you cannot

1   remove vehicles without an authorization and the police

2   are going to help them make that happen over this

3   weekend is what I am told.  Well, they are the ones that

4   initiated this process to make that it happen.

5                    THE COURT:  I am going to take all of

6   this under consideration.  There is too much here for me

7   to rule from the bench.  I have to look to any authority

8   that you have relative to what you requested.  I have to

9   look to Mr. Otto.  Mr. Otto has got to get me a

10  rendition of his billing to substantiate whether or not

11  a sanction is even something that is warranted at this

12  point in time.  Are you of the position that if you get

13  the tags this weekend that at least the vehicles would

14  be removed off of the property?

15                   MR. ROTH:  Yes.

16                   THE COURT:  All of them?  I do not know

17  how many there are.

18                   MR. OTTO:  Many.

19                   MR. ROTH:  What happened was they asked

20  the township to have the vehicles tagged and the police

21  are going out there to go do it this weekend is what we

22  have been told.  Once they are tagged they can remove

23  the vehicle.

24                   THE COURT:  You might need to educate me

25  here on this because I try as much to know as much stuff

1   as possible.  Doesn't the Department of Transportation

2   have to be there or can the township or municipal police

3   simply tag it on their own?

4                MR. ROTH:  My understanding is that the

5   municipal police can do that and then it can be removed.

6                THE COURT:  Is there some designated

7   place they have to go to per the Department of

8   Transportation's involvement?

9                MR. ROTH:  Could I ask my client?

10               TE COURT:  Stand up and raise your right

11  hand.

12  GEORGE SNYDER, having been

13  first duly sworn, was examined

14  and testified as follows:

15                            * * *

16                   DIRECT EXAMINATION

17  BY THE COURT:

18  Q.        Can you clear this up for me?

19  A.         There are certain vehicles on the property

20  that were abandoned.  We have been trying to clean it up

21  for years.  We know the township -- they did not

22  approach us, we approached them.  We know they want it

23  to look nice.  I asked them, "Our hands are kind of

24  tied.  We cannot touch a titled vehicle."

25                He said, "Maybe see if the police will help

1   you.  If they red tag that or yellow tag that then after

2   ten days the scrap company can take it to the scrap

3   yard.  Otherwise, you will need a title to tow a vehicle

4   and transport it to the scrap yard.

5   Q.          So they have to be declared by the tag as an

6   abandoned vehicle and then you can move them.  Are the

7   ten days burned up so at this point they can be removed

8   this weekend?

9   A.          That is my understanding.  I spoke with the

10  officer yesterday and he said he would come out this

11  weekend and tag them.  Then after 7 to 10 days we can

12  remove them.

13  Q.          So you are not going to be to be removed this

14  weekend anyway?

15  A.          No.

16          THE COURT:  Mr. Otto, would you and your

17  client agree that if they get tagged and are scrapped

18  and removed that any of the proceeds from the scrap yard

19  would go to U-lock if they put all of the effort into

20  getting them off the property?  I am not sure what would

21  get out of it.

22          MR. OTTO:  They have cause my client so

23  much aggravation and so many legal fees I am not

24  inclined to be --

25          THE COURT:  Well, if before you get

1   possession they removed them and the income derived from

2   scrapping the abandoned vehicles is theirs.  You would

3   agree with that, correct?

4               MR. OTTO:  Yes and no, Your Honor.  Let

5   me explain something.

6               THE COURT:  Sure.

7               MR. OTTO:  Back shortly after the trial,

8   some time in 2019, we arranged for a site visit and we

9   took an environmental engineer with us.  He went through

10   and wrote up an extensive report.  If it was just

11   vehicles on the property, Your Honor, it might not be

12   that big of a deal but there is all sorts of waste, Your

13   Honor.  There is municipal waste.  There are barrels

14   that may contain oil.  There is just a whole morass of

15   environmental problems there.  If they get the money --

16   if I could believe that they would use it to clean up

17   the site that would be fine.

18               THE COURT:  Your concern is that it is

19   even going to happen?

20               MR. OTTO:  Yes, sir.

21               THE COURT:  If it does not happen you

22   gain possession.  Regardless of whether they tagged or

23   not you gain possession of them by the declaratory

24   judgement you are seeking if that is granted to you

25   after my review and under the advisement of this

1    hearing.

2              MR. OTTO:  Yes, Your Honor.  If I may,

3    Your Honor.  These are the relevant provisions.  That is

4    the statute of the declaratory action and that is the

5    rule and the rules of civil procedure.

6              THE COURT:  Mr. Roth, I think that prior

7    to rendering a decision one way or the other if you get

8    things done within that timeline that any proceeds that

9    are generated are theirs but if they are not done within

10   the timeline and it should not go in your favor once

11   possession is taken whatever is there then becomes

12   available for the subsequent possessor to capitalize on.

13   The issue here is based on Mr. Otto's representation is

14   that there is probably a higher cost associated with the

15   clean up then what can be generated by selling or

16   scrapping and I am not just talking vehicles.  I am

17   talking about a multitude of other things.  Go through

18   your attorney first.  Mr. Snyder wants to say something.

19             MR. SNYDER:  I just wanted to explain to

20   you about the title and ownership of the car.  The cars

21   do not belong to U-lock.  Most of them are clients cars.

22   One may belong to John, one to Henry, one to Steven,

23   etc.  When we tell this person who couldn't pay that you

24   have to get this car out of here they cannot move it

25   themselves without a title.  They cannot put it on the

1    tow truck and take it.  We will not really get proceeds.

2    They would have to then apply to PennDot and get a new

3    title.  That is $48 or something and most of them do not

4    have the money or else they would not have lost their

5    vehicle.  They are willing to say just tag it, get rid

6    of it, part ways.

7                    THE COURT:  So you have releases from

8    owners of the vehicles to go ahead and dispose of them?

9                    MR. SNYDER:  Yes.  If there is any money

10   to be made it is very inconsequential.  $200 a car or

11   something.

12                   THE COURT:  Then after you pay for the

13   tow truck and everyone else to get it out of there.

14                   MR. OTTO:  Your Honor, I have two

15   questions.  I would ask Mr. Snyder to tell us who the

16   police officer was that he spoke to.  Second, is to get

17   copies of the releases that he has received and that he

18   just represented that he has so that if the cars are

19   still there when we go to take possession we can deal

20   with that.

21                   THE COURT:  Mr. Snyder is shaking his

22   head affirmatively.  Could you make copies of those and

23   have some verification of the tags and which officer

24   that you spoke with that is cooperating with your effort

25   to get those out of there.  So I need the owner's

1  releases for the title, the cars that are already

2  tagged, and some kind of copy of the tag that you have.

3  I do not know if you have to do that through cellphone

4  photos and then print them something.  Then the name of

5  the officer that you have been coordinating with to get

6  this done.  I would ask that that be done immediately.

7  could you have that to Mr. Otto by close of business

8  Tuesday?

9              MR. SNYDER:  Yes.

10             THE COURT:  So 5 o'clock Tuesday which is

11  the 26th of April.  Anything else from either constable

12  before I adjourn?

13             MR. OTTO:  Nothing further.

14             MR. ROTH:  No, Your Honor.

15             THE COURT:  I will take it all under

16  advisement.  I have everything before me and I will

17  review everything and make the appropriate rulings there

18  after.

19             MR. ROTH:  My client is asking what the

20  timeframe is for --

21             THE COURT:  If you were in here for

22  motion's court this morning it is going to be a couple

23  of day.  We are trying to get everything together and I

24  will get something out on this but I cannot tell you a

25  defined day but it will be into the next week, probably

1   the following week.

2

3                          *  *  *

4

5           PROCEEDINGS ADJOURNED - 11:58 A.M.

6

7                          *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3                    *  *  *

4

5          I hereby certify that the proceedings are

6   contained fully and accurately in the notes taken by me

7   at the hearing of the within cause and that this copy is

8   a true and correct transcript of the same.

9

10

11   _____
     James Matta, Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25