IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>SHANNI SUE SNYDER,<br><br>Debtor.<br><br>SHANNI SNYDER,<br><br>Movant,<br><br>v.<br><br>CHARLES ZEBLEY, Trustee, JOHN BIROS, CHRISTINE BIROS, GREENSBURG CENTRAL CATHOLIC JUNIOR SENIOR HIGH SCHOOL, and UNITED TATES TRUSTEE<br><br>Respondents. | Bankruptcy No. 18-21983-CMB<br><br>Chapter 7<br><br><br>Related Doc. No.: 97<br><br>Hearing Date: February 14, 2023 at 1:30 p.m.<br>Response Date: February 10, 2023 |

**CHRISTINE BIROS' RESPONSE TO EXPEDITED SECOND AMENDED MOTION PURSUANT TO 11 USC 707(a) TO DISMISSS WITHOUT PREJUDICE AND TO REVOKE THE DISCHARGE**

Christine Biros ("Biros""), responds to the Debtor's Expedited Second Amended Motion Pursuant to 11 U.S.C. §707(a) to Dismiss Without Prejudice and to Revoke the Discharge (the "Motion to Dismiss")(Doc. No. 97), as follows:

**INTRODUCTION**

1. As this Court is aware, Biros and Shanni Snyder ("Shanni" or "Debtor") have a long and tumultuous history which stems from the Debtor's – and the Debtor's family's – harassment of Biros through vexatious litigation.

2. The Debtor is the sister of Kash Snyder and George Snyder, the majority shareholders and parties in control of U-Lock Inc. ("U-Lock"), a Chapter 7 debtor whose case is currently pending before this Honorable Court at bankruptcy case number 22-20823 (the "U-Lock Bankruptcy Case")

3. The Debtor's most recent action is to request dismissal of her case now that it no longer serves to benefit her and her fraudulent conspiracy. The Motion to Dismiss comes on the heels of Judge Taddonio's instructions at a January 27, 2022 hearing in the U-Lock Bankruptcy Case that the *lis pendens* against Biros' property should be withdrawn.

4. As a result of the January 27th hearings in the U-Lock Bankruptcy Case, the *lis pendens* has now been withdrawn and Debtor is aware that the automatic stay no longer serves any benefit to her in perpetuating her scheme to defraud Biros of her real property and that her fraudulent use of the bankruptcy system may be to her ultimate detriment.

5. As such, the Debtor only now wishes to dismiss her case, and on an emergency basis, with no reasonable justification for that dismissal. She asserts that the parties will be in the same position if the case is dismissed as they would be with the case in place.

6. The parties will not be in the same position if the case is dismissed; the case was re-opened for Debtor's failure to disclose an asset and in so re-opening the case (as a result of her actions in filing an involuntary petition against U-Lock to collect on her alleged claim and deprive Biros of her property) Debtor has benefitted from the stay and her discharge.

7. Debtor has even recently asserted (incorrectly) that Biros violated the automatic stay in seeking to eliminate the improper *lis pendens* on Biros' property in Westmoreland County. Having asserted the existence and value of the automatic stay, Debtor should not now be able to dismiss her case after almost five years of the case's existence.

8. Debtor has benefitted from the bankruptcy process by not only forcing Biros to incur substantial legal fees and costs in defending her property but allowing her to purchase assets (the sale of all assets of U-Lock for $70,000.00) while creditors were not allowed to pursue their valid claims against the Debtor.

9. Dismissal of the case allows the Debtor to not only have purchased assets while in a Chapter 7 bankruptcy but then to not share any recoveries with her creditors. Debtor serves to only benefit while all other parties will be severely prejudiced.

10. In sum, the Motion to Dismiss should not be granted as Debtor has not demonstrated cause for dismissal under 11 U.S.C. § 707(a) and granting the Motion would result in manifest injustice.

## FACTUAL BACKGROUND

11. On May 15, 2018, the Debtor filed a voluntary chapter 7 bankruptcy petition at case number 18-21983-CMB (the "Bankruptcy Case").

12. As a result of the Debtor's failure to disclose an alleged cause of action, the trustee in the Bankruptcy Case, Charles O. Zebley (the "Trustee") deemed the Bankruptcy Case to be a "no asset" case. *See* Trustee's Report of No Distribution, Sept. 5, 2018.

13. On May 31, 2019, the Bankruptcy Court entered an order discharging the Debtor. *See* Order Discharging Debtor [Doc. No. 36].

14. On July 31, 2019, the Bankruptcy Court entered a final decree in the Bankruptcy Case and the Bankruptcy Case was subsequently closed. *See* Final Decree [Doc. No. 28]; text entry closing Bankruptcy Case [Doc. No. 29].

15. As this Court is aware, this case was reopened following Debtor's failure to disclose the basis of the *lis pendens* on her bankruptcy schedules: that assert purportedly based on an action filed in the United States District Court for the Western District of Pennsylvania [Case No. 21-cv-00904] on July 14,

2021 (the "Shanni Snyder District Court Action") against U-Lock for an alleged failure of U-Lock to pay wages to the Debtor.

16. The *lis pendens* was recorded against real property located at 14140 U.S. Route 30 in North Huntington, Pennsylvania (the "Real Property") from which U-Lock operated and which belongs to Biros[1].

17. On July 7, 2022, the Bankruptcy Court entered an order reopening the Bankruptcy Case [Doc. No. 51].

18. On December 8, 2022, the Trustee filed a Motion to Approve Settlement of the Exemptions of Debtor's Assets [Doc. No. 66](the "Settlement Motion"), which, provides in sum, for the Trustee to receive the first $32,500 distributed to the Debtor in the U-Lock Bankruptcy Case and for the Debtor to receive any surplus.

19. Debtor's claim in the U-Lock Bankruptcy Case is purportedly $263,100.00 (the "Debtor's U-Lock Claim"). *See*, Claim Number 1 on the Claims Docket, U-Lock Bankruptcy Case.

20. On December 15, 2022, the Debtor purchased assets of U-Lock, the rights and interests in the Property as well as the ability to bring various claims and causes of action pursuant to 11 U.S.C. §§ 547 and 548, from the U-Lock Trustee for $70,000 (the "Sale").

21. On December 20, 2022, Judge Taddonio entered an Order approving the Sale [Doc. No. 254] (the "Sale Order").

22. After the Sale Order was entered, Biros filed a Motion for Relief from the Automatic Stay in the U-Lock Bankruptcy (the "U-Lock MFR"). Likewise, on December 28, 2022, Biros filed an Expedited Motion for Relief from the Automatic Stay in this Bankruptcy Case (the "Shanni MFR" together with the U-Lock MFR the "MFRS").

---

[1] Biros is the sole owner of the Property and has been the beneficial owner of the Property since July, 2015 after a multi-year fight in the Court of Common Pleas of Westmoreland County. Neither the Debtor nor U-Lock has ever been the owner of fee simple title to the Property.

23. Biros also filed an Action to Quiet Title in the Court of Common Pleas of Westmoreland County, Pennsylvania with respect to the Property (the "Quiet Title Action").

24. Debtor then filed a Motion to Enforce the Sale Order and objections to Biros' Motion for Relief from the Automatic Stay with respect to the Property in the U-Lock Bankruptcy Case essentially arguing that Biros' filing of the Action to Quiet Title was a violation of the automatic stay in this case and Sale Order.

25. On January 11, 2023, Debtor also filed a Motion Pursuant to 11 U.S.C. §362(k) for Automatic Stay Violations [Doc. No. 81] again alleging that Biros and her counsel William E. Otto violated the automatic stay in her Bankruptcy Case by filing the Quiet Title Action.

26. On January 27, 2023, Chief Judge Gregory Taddonio held hearings in the U-Lock Bankruptcy Case on several matters, including Biros' Motion for Relief and the Debtor's Motion to Enforce Sale Order (the "January 27th Hearings").

27. On January 27, 2023, Chief Judge Gregory L. Taddonio entered an Order granting Biros relief from the Automatic Stay [Doc. No. 307, U-Lock Bankruptcy Case] to facilitate the transfer of possession and pursue any and all state court rights related to the Property (the "Order Granting Relief").

28. Judge Taddonio likewise denied the Motion to Enforce Sale Order and in conjunction therewith, Debtor's counsel in the U-Lock Bankruptcy Case agreed to strike the *lis pendens* (the subject of the Action to Quiet Title) as well as to terminate the supporting Writ of Summons based in part on the Judge's statement that the *lis pendens* was invalid.

29. Additionally, at the January 27th hearings, Judge Taddonio entered an Order approving a Stipulation between Debtor, Charles O. Zebley, Jr. and Robert H. Slone wherein*, inter alia*, the Judge recognized and acknowledged that Debtor consented to giving Biros relief from the automatic stay in Debtor's case for the sole purpose of pursuing an objection to her proof of claim in the U-Lock bankruptcy

Case. *See*, U-Lock Bankruptcy Case, Doc. No. 305. Debtor also agreed that Biros objecting to the Debtor's claim filed in the U-Lock Bankruptcy Case would not violate any stay in this case.

30. On January 31, 2023, the Debtor filed the within Motion to Dismiss.

## STANDING

31. Debtor and Biros both filed claims against U-Lock. *See*, U-Lock Bankruptcy Claims Docket, Claim Nos. 1, 2, 3, 4.

32. Additionally, Debtor acquired U-Lock's assets, including the right to bring any avoidance actions, pursuant to the Sale Order. The success of any of this potential litigation will impact both the Debtor's estate as well as Biros as they ultimately share in the same pool for the U-Lock assets for any allowed claims. Further, the Debtor's action in this case, the U-Lock Bankruptcy Case and the Shanni Snyder District Court Case are all actions taken together in coordination to advance a fraud against Biros and have cost Biros and her family significant financial and emotional anguish.

33. Thus, Biros has a pecuniary interest in the outcome of the bankruptcy proceedings and standing in this case. *See, Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)* 151 F.3d 605, 60 (7th Cir. 1998)(Standing for purpose of a bankruptcy case requires "a pecuniary interest in the outcome of the bankruptcy proceedings.")

34. Accordingly, Biros has a pecuniary interest in the outcome of the Debtor's case and standing to object to the Motion to Dismiss.

## ARGUMENT

I. <u>Debtor Has Not Demonstrated Cause for Dismissal Under §707(a)</u>

35. 11 U.S.C. §707(a) provides that a case may be dismissed only after notice and a hearing and only for cause [.].

36. Although the Bankruptcy Code does not expressly address whether § 707(a) applies to a debtor seeking voluntary dismissal their own petition, chapter 7 debtors may move for voluntary dismissal under § 707(a). While a chapter 7 debtor may choose to file bankruptcy voluntarily, the debtor does not enjoy the same freedom to withdraw the bankruptcy case as of right once it has been commenced. *In re Jabarin*, 395 B.R. 330, 331 (Bankr. E.D. Pa. 2008)

37. To dismiss a chapter 7 case voluntarily, "the debtor has the burden of demonstrating sufficient cause." *In re Boyce*, 2006 U.S. Dist. LEXIS 78680, 2006 WL 3061633, at *3; *accord In re Cohara*, 324 B.R. 24, 27-29 (B.A.P. 6th Cir. 2005); *In re Turpen*, 244 B.R. at 434.

38. Determining whether sufficient cause exists is committed to the sound discretion of the bankruptcy court. *In re Boyce*, 2006 U.S. Dist. LEXIS 78680, 2006 WL 3061633, at *4; *In re Heatley*, 51 B.R. 518, 519 (Bankr. E.D. Pa. 1985).

39. Cause is not defined in 11 U.S.C. §707(a). Courts have formulated various standards for determining whether there are grounds for the voluntary dismissal of a chapter 7 case. *See In re Cochener*, 382 B.R. 311, 334 (S.D. Tex. 2007).

40. In *Jabarin,* the Eastern District of Pennsylvania Bankruptcy Court adopted a balancing of interests approach to determine whether there is "cause" for voluntary dismissal under Section 707(a) in *In re Jabarin,* 395 B.R. 330, 339-41 (Bankr. E.D. Pa. 2008). The Jabarin Court acknowledged two factors that tend to recur as important in the courts' ultimate conclusions on whether to grant §707(a) voluntary motions to dismiss, that is: good faith (only a debtor who has acted in good faith is permitted to voluntarily dismiss a Chapter 7 case) and prejudice.

41. Recently, the Eastern District of Pennsylvania has confirmed its standard under §707(a) in which the court will engage in "a factually intensive assessment of the debtor's reasons for dismissal and of the impact dismissal can be expected to have with two factors predominate in the Court's inquiry: (1)

has the debtor acted in good faith, and (2) the degree to which creditors will be prejudiced by dismissal. *In re Silvera,* No. 21-12213 ELF, 2022 Bankr. LEXIS 1943, at *12-13 (Bankr. E.D. Pa. July 14, 2022)

42. Debtor has not pointed to one specific allegation of cause to support dismissal under Section 707(a). She merely states that there "exists no reason not to dismiss" and that "all parties can be placed in their original position." Such allegations are not "cause" (and certainly do not rise to the standard of demonstrating sufficient cause) and are simply not true.

43. Creditors and the Trustee will be prejudiced if the case is dismissed and there are numerous reasons not to dismiss the case, including primarily, the Debtor's complete lack of good faith.

44. Debtor only seeks dismissal now that it has been determined by Judge Taddonio that there is no stay in effect as to the Property and thus her Bankruptcy Case no longer benefits her after having using the bankruptcy process to her advantage to demonstrate standing in filing the U- Lock Bankruptcy Case.

45. Only now does the Debtor seek to consider "judicial economy" after her spurious and vexatious litigation, filing motions to harass Biros at every turn in both this case and the U-Lock Bankruptcy Case and having made it clear she will take whatever actions are necessary for Biros to incur additional legal fees.

*A. Debtor is not acting in good faith*

46. Debtor is clearly manipulating the bankruptcy process – using it to her advantage when it suits her – and trying to get out of it when it no longer benefits her.

47. A finding of good faith is critical to a Debtor's motion to dismiss their Chapter 7 case pursuant to 11 U.S.C. §707(a) as bankruptcy courts are vigilant in attempting to protect the bankruptcy system from parties who seek to manipulate the process.

48. Although the Code does not define "good faith," courts in this circuit have uniformly held that "at the very least, good faith requires a showing of honest intention." *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000). Courts can determine good faith only on an ad hoc basis and must decide whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law. *Id*.

49. "Limiting voluntary dismissal to debtors who are acting in good faith simply may be an example of the general principle that courts do not reward anyone who is trying to manipulate the court system. Bankruptcy courts are vigilant in attempting to protect the bankruptcy system from parties who seek to manipulate the process or otherwise act in bad faith. Debtor requests for voluntary dismissal of chapter 7 cases may heighten these concerns due, in part, to the sequence of the debtor invoking the bankruptcy process and later requesting termination of the process after having already reaped the benefit from the automatic stay, 11 U.S.C. §362(a). Whatever the precise explanation may be, courts are keenly sensitive to any indicia of bad faith conduct by the debtor in evaluating voluntary motions to dismiss under §707(a)." *In re Jabarin,* 395 B.R. 330, 339-41 (Bankr. E.D. Pa. 2008)

50. In determining good faith, court should look first at debtor's manifested attitude toward integrity of bankruptcy process; bad faith would be evidenced by pervasive and orchestrated effort on part of debtor to obtain benefits of bankruptcy filing while at same time intentionally and fraudulently taking action to avoid any of detriments. *In re Khan*, 172 B.R. 613, Bankr. L. Rep. (CCH) ¶ 76166, 1994 Bankr. LEXIS 1501 (Bankr. D. Minn. 1994).

51. Here Debtor is clearly not acting in good faith: filing this Motion days after Judge Taddonio has determined that the automatic stay was not violated (in either this case or the U-Lock Bankruptcy Case and granting Biros relief from stay to object to Debtor's Claim in the U-Lock Bankruptcy Case). Debtor now wants to dismiss the case as she can no longer use the automatic stay as a tactical and litigation tactic.

52. This Motion was filed immediately subsequent to Biros' response to Debtor's request for sanctions of alleged stay violations (after Judge Taddonio clearly expressed his belief that there was no stay violation) and when there is an evidentiary hearing scheduled for later this month on said motion, as well as the Shanni MFR and Settlement Motion. It is also not lost on Biros – and should not be lost on the Court - that this Motion was filed after Biros served her with a Rule 9011 Notice on January 27, 2022 for her pending actions in this bankruptcy case.

53. The honesty and sincerity of this Debtor has been in doubt since the case was re-opened because she asserted a previously undisclosed and fraudulent claim in the U-Lock Bankruptcy Case. The Debtor is clearly manipulating the estate and bankruptcy process so as to utilize its assets to her benefit and to the detriment of creditors.

   B. *Creditors Will be Prejudiced By Dismissal*

54. There is no clear standard for prejudice to the creditors. However, "it brings various questions as to 'how to define and measure prejudice, such as: Can the mere pendency of a bankruptcy case (before its dismissal) and concurrent pendency of the automatic stay, without more, be considered inherently "prejudicial" to creditors and, as such, grounds for denying a voluntary motion to dismiss? If so, how long must a case be pending before the resulting delay in seeking nonbankruptcy-related remedies is prejudicial? What weight, if any, should be given to a debtor's proposed plan for voluntarily paying creditors outside of bankruptcy? May the loss of a motivated fiduciary (*i.e.*, the chapter 7 trustee) and a single forum for all creditors be considered "prejudice"? *In re Jabarin,* 395 B.R. 330, 339-41 (Bankr. E.D. Pa. 2008).

55. Here, Debtor has clearly manipulated the bankruptcy process and her estate so as to utilize assets to her benefit and to the detriment of the creditors and other parties in interest. Parties in interest would be severely prejudice by her dismissal especially in light of the legal fees incurred by the creditors

due to her litigation and vexatious actions taken in this bankruptcy to do anything she can to gain an advantage for herself and her brothers.

56. Shanni is clearly a sophisticated/experienced Debtor and would have concealed assets of the Estate if she could have.

57. Moreover, Debtor's creditors would be prejudiced by the prohibition from collecting on the debts owed to them during the re-opened bankruptcy case as well as Debtor's further incurring of debt in purchasing the U-Lock assets.

II. Granting the Motion Would Result in Manifest Injustice

58. Additionally and/or alternatively, this Honorable Court should deny the Motion in the interest of justice to prevent abuse of the bankruptcy process pursuant to 11 U.S.C. §105(a).

59. 11 U.S.C. §105(a) provides that the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

60. Enactment of 11 U.S.C § 707 does not preclude or pre-empt application of equitable principles in consideration of request for dismissal instituted by debtors. *In re Blackmon*, 3 B.R. 167 (Bankr. S.D. Ohio 1980).

61. In *In re Marrama*, 549 U.S. 365 (2007), the Court recognized that bankruptcy courts had power under 11 USCS § 105 to issue orders that prevented abuse of bankruptcy process, and that power included power to deny a motion to a dismiss debtor's case when the debtor acted in bad faith.

62. Debtors do not have the absolute right to dismiss their case; rather, that right is qualified by authority of bankruptcy court to deny dismissal on grounds of bad faith conduct or to prevent abuse of process. *Brown v. Billingslea (In re Brown),* 2015 Bankr. LEXIS 3625 (9th Cir. Oct. 26, 2015).

63. Moreover, Debtor's request for her discharge to be revoked is irrelevant to the dismissal. "Unlike Chapter 13, a Chapter 7 debtor does not have an absolute right to dismissal and a bankruptcy

court typically does not dismiss a case with an asset of consequential value that can be liquidated for the benefit of unsecured creditors. Indeed, estate assets usually are administered regardless of whether a debtor receives a discharge." *Stein v. Stubbs (In re Stubbs),* 565 B.R. 115, 124 (B.A.P. 6th Cir. 2017)

64. Here, Debtor used the bankruptcy process prior to Trustee's reopening her case to assert a fraudulent claim as a basis for standing in filing an involuntary Chapter 7 bankruptcy petition. The Trustee reopened the case for the specific purpose of administrating what might have been a valuable claim – based on Debtor's allegations in the involuntary case. The Debtor cannot now request dismissal where she no longer serves to benefit from the bankruptcy process after having received the benefits for over seven months.

65. Debtor did not voluntarily file this case, it was re-opened because the Trustee discovered she had concealed an asset that she was using to file an involuntary bankruptcy petition against a company that her brothers owned.

66. Despite her pending bankruptcy, lack of assets and income, the Debtor purchased the "rights" and "interests" in the Property as well as the ability to bring various claims and causes of action from the U-Lock Trustee for $70,000[2].

67. Debtor now wants to dismiss the case (and thus not share in any potential recovery from the U-Lock Bankruptcy Case). It is also clear now that the Trustee can proceed against her brothers regarding their claims and/or receipt of potential preferences, she wants to dismiss the case as she does not want the Trustee (or herself) to pursue her brothers with regard to the default Judgment and related unpaid wages.

---

[2] It is still unclear the connection between the lender and the Debtor and why the Debtor was able to borrow $70,000.00 to purchase the assets.

68. Accordingly, dismissal is not appropriate here as there is no cause to support same, the Debtor is not acting in good faith, the creditors would be substantially prejudiced, and substantial injustice would result.

WHEREFORE, Biros respectfully request that this Honorable Court deny the Motion and for such other and further relief as is just and appropriate.

Dated: February 10, 2023                   BERNSTEIN-BURKLEY, P.C.

By: */s/ Kirk B. Burkley*
Kirk B. Burkley (PA ID No. 89511)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile: (412) 456-8135
kburkley@bernsteinlaw.com
lmartin@bernsteinlaw.com

*Counsel for Christine Biros*